Francis J. LaBLANC, Petitioner,

v.

**Wayne K. PATTERSON, Warden of the Colorado State Penitentiary, Respondent.**

**Civ. A. No. C–595.**

United States District Court
D. Colorado.

Dec. 5, 1968.

**608**

Alex Stephen Keller, Denver, Colo., for petitioner.

Robert C. Miller, Asst. Atty. Gen., Denver, Colo., for respondent.

## MEMORANDUM OPINION
### and
### ORDER

CHILSON, District Judge.

The petitioner, a prisoner in the Colorado State Penitentiary, filed a Petition in forma pauperis attacking the validity of the convictions and sentences by which he is confined, and seeks his release by a Writ of Habeas Corpus.

Upon the filing of the Petition, an Order to Show Cause was issued to the respondent who in due course filed a return thereto, which was traversed by petitioner's court-appointed counsel. Thereafter and on November 13, 1968, an evidentiary hearing was had at which petitioner appeared in person and by his counsel, and witnesses were heard including the petitioner who testified in his own behalf. There was offered and received into evidence, the record of the proceedings in the state court, resulting in the petitioner's convictions.

The Court, after hearing the evidence and argument of counsel, took the Petition under advisement and now renders its decision.

From the evidence, the Court finds that defendant was convicted in the District Court of the City and County of Denver, in two separate criminal cases after jury trials.

### CASE NO. 52905

In this case, the defendant was convicted of separate counts of rape, burglary, and assault with a deadly weapon and received the following sentences:

For rape, not less than 50 nor more than 70 years;

For burglary, not less than three nor more than six years to run consecutive to the sentence on the rape convictions;

For assault with a deadly weapon, one to four years to run concurrently with the other two sentences.

Upon appeal, the convictions were affirmed by the Colorado Supreme Court. La Blanc v. The People of the State of Colorado, 161 Colo. 274, 421 P.2d 474.

The petitioner seeks a vacation of these convictions on two grounds:

1. That the use of television cameras in the courtroom during the trial created hostility and distracted the jury to the extent that the defendant was denied due process of law;

2. That the conviction is supported only by the uncorroborated testimony of the victim, Mrs. Hayutin, and her testimony being uncorroborated, the conviction denies the defendant due process of law.

As to the latter contention, due process of law does not require that the testimony of a victim of forcible rape be corroborated, nor may the credibility of the victim as a witness be attacked in Federal Habeas Corpus proceedings, (Gay v. Graham, 10th Cir. 269 F.2d 482). It is only when there is a total absence of evidentiary support of conviction that there is a denial of due process. (Hall v. Crouse, 10th Cir. 339 F.2d 316; Martinez v. Patterson, 10th Cir. 371 F.2d 815).

The Court has reviewed the testimony and finds that there is ample evidentiary support for the convictions.

Referring now to the defendant's contention that he was deprived of due process because of the use of television cameras in the courtroom during the trial, neither the record of the trial proceedings nor the evidence in this proceeding support the contention that television cameras were in fact used in the courtroom during the course of the trial.

The only reference to television cameras in the trial record occurred on the morning of the second trial day, before the trial was resumed, in the Court's chambers and out of the presence of the jury, when petitioner's counsel stated that he had observed in the Court that morning, a television camera and photographers with other cameras and made an objection to pictures being taken of the defendant during the course of the trial. After some discussion, during which the petitioner stated that he didn't want pictures taken of himself and his counsel's statement that petitioner's wife objected to the taking of pictures, the Court stated:

"I don't want any more photographs of the defendant's wife, gentlemen. As far as the television cameras and the still photographs are concerned, there is nothing before the Court at this time that would, in the judgment of this Court, violate Canon 35.[1] And you may rest assured that the first instance, if such there be, that would in any way tend to violate the provisions of Canon 35, this Court will stop any and all pictures immediately."

There were no further objections by petitioner or his counsel and the record discloses nothing further with reference to television cameras.

The petitioner has not sustained the burden of proof imposed upon him to show that television cameras were in fact used in the courtroom during the trial, and that their use created a condition of distraction and prejudice which

1. *Canon 35. Improper Publicizing of Court Proceedings*

Proceedings in court should be conducted with fitting dignity and decorum. Until further order of this Court, if the trial judge in any court shall believe from the particular circumstances of a given case, or any portion thereof, that the taking of photographs in the court room, or the broadcasting by radio or television of court proceedings would detract from the dignity thereof, distract the witness in giving his testimony, degrade the court, or otherwise materially interfere with the achieve-

ment of a fair trial, it should not be permitted; provided, however, that no witness or juror in attendance under subpoena or order of the court shall be photographed or have his testimony broadcast over his expressed objection; and provided further that under no circumstances shall any court proceeding be photographed or broadcast by any person without first having obtained permission from the trial judge to do so, and then only under such regulations as shall be prescribed by him. (Adopted February 27, 1956).

deprived the petitioner of a fair trial. Having failed to sustain the burden of proof, this contention of the petitioner is without merit.

For the reasons above set forth, the Petition, insofar as it attacks the validity of the judgment and sentences in Case No. 52905, should be denied.

### CASE NO. 52938

In Case No. 52938, the defendant was convicted of separate counts of burglary and rape. The petitioner was sentenced to not less than three nor more than six years on the burglary conviction and to not less than sixty nor more than seventy years on the rape conviction, these sentences to run consecutively but concurrently with the sentences imposed in Case No. 52905.

The petitioner's attack on these judgments is twofold:

1. That he was denied due process when he was required, before the jury, to don a sweatshirt of the type allegedly worn by the rapist.

2. That the admission in evidence of statements allegedly made by the petitioner in the presence of a police officer (Detective Shiveley) and the rape victim (Miss Janssen) violated his constitutional rights as declared in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

■ The first ground is without merit. The sweatshirt which petitioner was required to put on in front of the jury was found in his possession and was similar to one which the rape victim testified her assailant wore on the night of the offense. The exhibition of the petitioner in the sweatshirt was material and competent evidence on the question of identification and is not violative of the petitioner's Federal Constitutional rights. Holt v. United States, 218 U.S. 245 at 252, 31 S.Ct. 2, 54 L.Ed. 1021.

■ The second ground of the Petition that the admission of statements allegedly made by the petitioner in the presence of Detective Shiveley and the victim, Miss Janssen, violated his constitutional rights is not considered on its merits, for as we shall see, the petitioner has not exhausted his state remedies as required by Title 28, U.S.C.A. § 2254.

The rape and burglary for which petitioner was convicted occurred on the night of April 12, 1964. On Sunday, June 13, 1964, at about 11:45 P.M., the petitioner was taken into custody. On Wednesday, June 16, Miss Janssen went to the police building to view a lineup, and afterwards she inquired if she could see the petitioner.

Shiveley had petitioner brought to his office where he was confronted by Miss Janssen. Over petitioner's objection, both Shiveley and Miss Janssen were permitted to testify that Shiveley asked petitioner if he recognized Miss Janssen and petitioner stated she looked familiar and later said that Miss Janssen is the one whose boyfriend drives a white Lincoln. Shiveley testified further that Miss Janssen asked petitioner why he did it and he said he was sick and that people like him should be in a hospital.

Upon appeal to the Colorado Supreme Court, the petitioner again raised the question of admissibility of this testimony and urged that its admission was contrary to Escobedo. The only record which the Colorado Supreme Court had before it was the record of the proceedings in the trial court, and if that were the only evidence before this Court, we would dispose of this question on its merits. However, the evidence submitted to this Court is substantially different than that submitted to the state trial court and to the Colorado Supreme Court. The difference lies in the testimony of one Jacob L. Sherman who testified in the instant proceeding but did not testify in the state court proceedings. Consequently, neither the state trial court nor the Colorado Supreme Court had before it, at the time of their decisions, the testimony of Mr. Sherman.

Mr. Sherman, a member of the bar of the State of Colorado, testified that

he was called by some member of petitioner's family who requested him to see the petitioner. Mr. Sherman went to the police building either on Monday, June 14, or Tuesday, June 15—he thinks it was Tuesday afternoon—and asked to see the petitioner. He was told to sit down and wait for an hour or come back in an hour, and that they would then let him see the petitioner. Mr. Sherman had other matters to attend to, did not wait, but returned on the afternoon of Wednesday, June 16. He was at that time permitted to see the petitioner. Mr. Sherman testified further that he did not participate in the trial of the petitioner in the Denver District Court, and that he was not called as a witness.

The Colorado Supreme Court, in reviewing the convictions, in 52938, referred to the testimony of Shiveley and Miss Janssen and stated:

"We think it sufficient to say that the facts involved in the instant case and those presented in Escobedo are clearly distinguishable."

It is not for this Court to prophesy what the state trial court or the Colorado Supreme Court would have done had they had before them the testimony of Mr. Sherman; but for this Court to determine, at this time, this portion of the Petition on its merits would allow the petitioner to bypass the state courts in violation of the requirement of Section 2254 requiring the petitioner to exhaust his state remedies before seeking relief here.

The Court in the circumstances of this case, finds that to exhaust his state remedies, petitioner is required to present to the state courts, essentially the same evidence which he presented to this Court. Rule 35(b) of the Colorado Rules of Criminal Procedure appears to be available for this purpose.

It is therefore ordered that the Petition be and the same is hereby denied without prejudice to the right of the petitioner to apply to the courts of the State of Colorado for relief.